SLIP OPINION

Cite as 2015 Ark. App. 663

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–15–299

| | |
|---|---|
| | Opinion Delivered November 18, 2015 |
| KRISTEL EARL | APPEAL FROM THE WASHINGTON |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. DR–2014-787] |
| V. | |
| | HONORABLE STACEY |
| JASON EARL | ZIMMERMAN, JUDGE |
| APPELLEE | |
| | AFFIRMED |

**BRANDON J. HARRISON, Judge**

Kristel Earl appeals the Washington County Circuit Court order giving her ex-husband, Jason Earl, custody of the parties' two daughters. She argues that the circuit court erred in finding (1) that she committed abuse and (2) that it was in the children's best interest to be placed with Jason. We affirm.

Kristel and Jason were divorced on 16 May 2012. Kristel was given custody of the parties' two daughters, M.E. and J.E., subject to Jason's visitation rights. Pursuant to a property-settlement agreement, Jason also agreed to pay child support in the amount of $323 biweekly.

On 8 May 2014, Jason filed a petition for modification of the custody arrangement. Jason alleged that a material change of circumstances had occurred that warranted a change

of custody, specifically Kristel's "lack of ability to make good decisions regarding the welfare of the minor children" and Kristel's recent arrest for domestic assault on the children. Jason was awarded temporary custody of the children, and Kristel was allowed supervised visitation. Kristel denied any change of circumstances and counterclaimed for an increase in child support. In June 2014, Kristel asked for unsupervised visitation, noting that the Department of Human Services had dismissed its dependency-neglect petition after finding "no issues of child maltreatment or imminent danger at this time." It does not appear that this request was ever ruled on by the circuit court.

The circuit court held a hearing on 31 October 2014. Fourteen-year-old M.E. testified that she and her mother had a "pretty good" relationship at the time of the divorce but that it had gotten worse over time. She explained that she and her mother argued frequently and that on 15 March 2014, there was an incident that resulted in her mother being arrested. On that day, according to M.E., Kristel slapped both her and J.E. on the cheek, yelled at them, and threw M.E.'s clothes into the hallway. M.E. admitted that she called her mother a bitch and slapped her in retaliation as well. M.E. called her dad and told him what happened, and her dad called the police. Kristel, M.E., and J.E. went out to get food, and when they returned home, the police were there. Kristel was arrested, and M.E. and J.E. were sent to a shelter in Bentonville. They were sent to their dad's home approximately one week later and have remained in his custody. M.E. explained that she liked visiting with her mom and that they had recently not been arguing as much. She testified that she was happier now and that it would be better for her and J.E. to live with their dad. On cross-examination, she acknowledged that about a

year ago, there were a couple of times that her dad had drunk too much, and she was concerned, but she stated that he does not drink anymore. M.E. also said that she felt bad about arguing with her mother and that she and her sister did not have any bruising, scarring, or cuts as a result of being slapped. Eleven-year-old J.E. confirmed that her mother had slapped her and had fought with M.E. during the incident in March. She also stated that she would like to live with her dad and have unsupervised visits with her mom.

Jason testified that the girls had lived with him since March 20 and that they were doing great. He explained that he had rules for the girls and that they had to do chores. He also stated that he had relocated to Fayetteville when he obtained custody of the girls, so they could stay in the same school, and that the girls had a good relationship with their stepmother, whom Jason had recently married. He testified that it was in the girls' best interest for him to have permanent custody because it was a happier environment with no fighting. He stated that it was important for the girls to have a relationship with their mother, that he would do everything to encourage that relationship, and that he was in favor of unsupervised visits. He acknowledged one incident approximately one year ago in which he was intoxicated in front of the girls but explained that it was an isolated incident.

Kristel testified and described her relationship with her daughters as "typical" before her arrest, but stated that her relationship with them had changed since Jason was given custody. She explained that the girls hardly ever called her or responded to texts. Kristel testified that she had taken court-ordered parenting classes and that she had been attending counseling with the girls, which was helping. She testified that she wanted

primary custody of the girls and that she would discipline them in the future by taking away their cell phones. She acknowledged that she had slapped J.E. and explained that she did it "to get her attention to quit yelling at me" and that she was "just trying to correct her behavior." Kristel also acknowledged fighting with M.E., slapping her, and throwing her clothes onto the floor. She stated that it was an isolated incident and that she "was not aware that I wasn't allowed to correct their behavior." Finally, Eleanor Mullin, Kristel's neighbor, testified that Kristel and her daughters had a "wonderful" relationship and that Kristel was an "excellent" mother.

In its oral ruling, the circuit court found that both J.E. and M.E. were very credible and that Kristel had committed abuse when she slapped them. The court found a material change of circumstances, which was "mother's poor parenting and slapping her two daughters in the face," and found that it was in the girls' best interest to remain in the custody of their father. Kristel was allowed unsupervised visitation. The court entered a written order in December 2014, and Kristel has timely appealed.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Anderson v. Thomas*, 2013 Ark. App. 653. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id*. The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id*.

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id.* In order to change custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Id.* In reviewing child-custody cases, we consider the evidence de novo, but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Preston v. Preston*, 2014 Ark. App. 58.

The juvenile code defines abuse as, among other things, "[a]ny of the following intentional or knowing acts, with physical injury and without justifiable cause: . . . (d) striking a child on the face." Ark. Code Ann. § 9-27-303(3)(A)(vi)(*d*) (Supp. 2015).[1] The code also provides that abuse shall not include "physical discipline of a child when it is reasonable and moderate and is inflicted by a parent or guardian for purposes of restraining or correcting the child. . . . The age, size, and condition of the child and the location of the injury and the frequency or recurrence of injuries shall be considered when determining whether the physical discipline is reasonable or moderate." Ark. Code Ann. § 9-27-303(3)(C)(i) and (iv).

Kristel argues that the circuit court erred in finding that abuse occurred within the meaning of Ark. Code Ann. § 9-27-303. She notes that neither child had any bruising, scarring, or cuts as a result of the slaps and that her intention in striking the children was to discipline them, not harm them. Kristel cites *Figueroa v. Arkansas Department of Human*

---

[1] Striking a child that is six years of age or younger in the face or head is considered abuse with or without physical injury. Ark. Code Ann. § 9-27-303(3)(A)(vii)(*a*).

*Services*, 2013 Ark. App. 83, in which a father's two children were adjudicated dependent–neglected due to inadequate supervision and physical abuse, based in part on one child's testimony that his father had slapped him on his face and head with his hand. In reversing the adjudication, this court held in part that "[a]lthough Figueroa's slapping J.F. on the face or head with his hand *could* support a finding of physical abuse, there was no indication whether the act was knowing or intentional or whether it occurred on more than one occasion." *Id*. at 5 (emphasis in original). *Figueroa* cited to *Johnson v. Arkansas Department of Human Services*, 2012 Ark. App. 244, 413 S.W.3d 549, in which this court held that there was no basis for a finding of dependency-neglect where the allegation involved a single, noninjurious "popping" of the child's head with the palm of the parent's hand. *Id*. at 10, 413 S.W.3d at 554.

Kristel asserts that because the slapping was a one-time incident, and no physical injury occurred, the cirucit court erred in finding that Kristel had committed abuse within the meaning of § 9-27-303(A). And because no abuse occurred, the circuit court erred in finding that a material change of circumstances had occurred warranting a change of custody. She contends that there is insufficient evidence to support the only other material change cited by the circuit court, which was Kristel's "poor parenting." She argues that the record shows that she diligently monitored her children and their activities, and she notes her participation in individual counseling, family counseling, and parenting classes during the pendency of the case. She also cites Eleanor Mullin's testimony that Kristel was an excellent mother. Finally, while acknowledging that the circuit court

found both girls to be credible witnesses, Kristel argues that this alone cannot support a finding of a material change of circumstances.

Kristel also argues that the circuit court's decision was not in the children's best interest. In support of this contention, she cites to two letters written by M.E. in 2012. The first letter, written around the time of the parties' divorce, describes her dad as "hateful" and "mean" toward her mom; the second letter, dated 25 April 2012 and addressed to her dad, asks him to try to stop drinking.[2] Based on this evidence of "hatred and alcohol use," Kristel argues that it was not in the children's best interest to be placed with Jason.

We agree that the circuit court erred in finding that Kristel committed abuse as defined in the juvenile code. But it does not necessarily follow that the court erred in finding a material change of circumstances. The evidence showed that fighting between Kristel and her daughters had increased and become volatile, as demonstrated by the slapping, yelling, and throwing clothes into the hallway; and both girls expressed that they were happier now and wished to remain in their father's custody. We hold that the circuit court did not clearly err in finding that a material change of circumstances warranting a change of custody had occurred and that the change of custody was in the children's best interest.

Affirmed.

VIRDEN and WHITEAKER, JJ., agree.

*Lisa Lundeen-Gaddy*, for appellant.

*David Hogue*, for appellee.

---

[2] In her brief, Kristel mistakenly identifies J.E. as the author of the first letter.