

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–15–123

| | |
|---|---|
| ALICIA DAWN NEUMANN<br>APPELLANT<br><br>V.<br><br>LLOYD DRAUGHON SMITH<br>APPELLEE | **Opinion Delivered** January 13, 2016<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. DR–2007–502–2]<br><br>HONORABLE BRENT HALTOM, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Lloyd Draughon Smith and Alicia Dawn Neumann were divorced in July 2008 by decree of the Circuit Court of Miller County. The parties later entered into a compromise settlement agreement, which the court approved in March 2009 as a modification of the original decree. On September 11, 2014, the court conducted a hearing on various motions by the parties. The court entered a final modification order in November 2014, and Ms. Neumann timely filed a motion for reconsideration. In December 2014, the court denied her motion. Ms. Neumann now appeals the final modification order and denial of her motion for reconsideration. Her points on appeal concern (1) the denial of her petition to sell the marital home, (2) the lack of a child-support order, (3) the alleged bias of the court, (4) the judge's in-chambers conference with the children, (5) the award of true joint custody, and (6) the denial of her motion for reconsideration of custody. We affirm.

The 2008 original decree of divorce granted Mr. Smith sole custody of the parties'

twin children (born on December 14, 2001). Ms. Neumann was granted visitation under the circuit court's standard order for visitation and was ordered to pay bi-weekly child support of $437. She received as her separate property a residence in Texarkana, Bowie County, Texas. Each party maintained a one-half ownership interest in the marital residence located in Texarkana, Miller County, Arkansas, subject to the following:

> The residence is set aside to Lloyd Smith for the use and benefit of the minor children until such time as the children reach the age of majority or are otherwise emancipated. At such time, the residence shall be sold and the proceeds of the sale, less the costs of the sale, shall be divided equally between Lloyd Draughon Smith and Alicia Dawn Neumann. If Lloyd Smith ceases to live in the residence with the children, Alicia Dawn Neumann may petition the Court to sell the residence.

The 2009 modification order and settlement agreement made changes to the original awards of custody, visitation, and child support. The parties received joint custody effective February 1, 2009; the amount of bi-weekly child support by Ms. Neumann was reduced to $218.50; and the parties were to split the cost of after-school care. Ms. Neumann continued to have the children at all times under the circuit court's standard visitation order as well as at times when Mr. Smith was physically absent from Texarkana. Upon Mr. Smith's anticipated "physical move" to Florida, Ms. Neumann was to become sole custodian and Mr. Smith was to have standard visitation. Regarding child support,

> [a]t the time that Alicia Dawn Neumann shall become sole custodian, child support shall be set and due from Lloyd Draughon Smith in an amount specified by Administrative Order No. 10 in accordance with his earnings at that time. A separate order of support shall be entered as soon as practicable after his physical relocation, but the child support so established shall be due retroactively back to the date of the actual move.

The marital home was to be "immediately listed for sale and sold as soon as reasonably

practicable" upon Mr. Smith's moving to Florida, with the proceeds less costs of sale to be divided equally as provided in the decree of divorce. A $53,809.35 judgment previously awarded to Mr. Smith in the divorce was reduced to $29,404.67, "due and payable" solely from Ms. Neumann's share of the sales proceeds.

Mr. Smith never moved to Florida because his anticipated job never materialized. However, Ms. Neumann's physical time with the children increased beyond what had been awarded as standard visitation and during the times that Mr. Smith was absent from Texarkana. Beginning with the 2012–13 school year, the twins used Ms. Neumann's address in order to attend public schools in Texarkana, Texas. On September 11, 2014, Ms. Neumann filed an amended motion to modify custody and a petition to sell the marital residence.[1] She asserted that because of changes in circumstances, it was in the children's best interest that she have the primary care, custody, and control of the children, subject to the reasonable rights of visitation of Smith, and that he be required to pay child support consistent with Administrative Order No. 10. Alternatively, she requested that the parties have equal custody and time with the children and that no child support be paid by either party.

In September 2014, the court conducted a hearing on the parties' motions concerning material changes of circumstances and change of custody, child support, sale of the marital home, and the children's residence. Ms. Neumann testified that she had been the primary caregiver for at least four years; that Mr. Smith intentionally had not notified her of an appointment date for one of the twins in Memphis, made pursuant to a medical referral to

---

[1]The initial motion and petition are not in the record before us.

which he objected; that the twins had been attending school in Texas; that they had not primarily resided with Mr. Smith for three years and that he no longer resided at the marital residence with them; and that the twins had indicated their choice that she be the primary custodial parent. Alternatively, she asked that the parties have equal custody and time with the children, that neither party pay child support, and that the court order a sale of the marital residence. Mr. Smith requested an increase in the amount of child support payable by Ms. Neumann; alternatively, he requested that the parties have equal custody and time with the children and that neither party pay child support. He also requested that the children's geographic residence be restricted to Miller County, Arkansas, or Bowie County, Texas.

The twins testified at the September 2014 hearing that they wanted to live with their mother, and the judge talked privately with them in chambers afterward. Other witnesses also testified at the hearing: Ms. Neumann's next-door neighbor; another neighbor, friend, and fellow church member of hers, who taught the children in Wednesday-night Bible study; an after-school childcare supervisor; Ms. Neumann; Mr. Smith; and a friend and coworker of Mr. Smith's.

At the conclusion of the hearing, the court expressed its belief that the parties could work together and its disbelief that the children spent a majority of their time with Ms. Neumann. The court acknowledged the twins' testimony of their preference to live with Ms. Neumann but stated, "I don't know if they were given the option of joint custody. The court discussed that with them, and they are willing to work toward that." The court found that the children needed more stability and that "it would be better for the children that joint

custody remain in effect." The court ordered that this would be "true joint custody. . . seven days on and seven days off," with holidays and summer to be equally split. Finding that Mr. Smith had not abandoned the marital residence, the court ruled,

> A close reading of the case—as long as that residence is being used in any matter for the children, which the court finds that it is—I don't know that it can be sold. You can do something on that on your own if you want, but I have to stick with the court's [previous] order . . . .

The court delayed ruling on child support until it could review Administrative Order No. 10 and income documents from the parties. It ordered an equal split of expenses for extracurricular-activity expenses, with the children choosing their activities.

The November 10, 2014 final modification order embodied the court's oral rulings. The order also included a finding that material changes of circumstances had occurred since entry of the 2009 agreed order and that the court's rulings were in the best interest of the children. Ms. Neumann's petition to sell the former marital residence was denied; her child-support obligation was ended effective September 11, 2014; neither party was awarded child support; and the court ordered that the children continue their schooling in Texas.

In her motion for reconsideration of the final modification, Ms. Neumann prayed for an emergency hearing "to hear the children's testimony of all that has occurred since the final hearing on September 11, 2014," and for reconsideration of the court's rulings. She alleged, among other things, that Mr. Smith had forbidden the children from transporting their clothing between houses and that O.S. had been physically assaulted by Mr. Smith's older son. Attached to the motion for consideration were three exhibits. Exhibits A and B were handwritten statements by the twins, each expressing a preference that the weekly exchange

5

be Friday instead of Sunday because it was a better time to get their clothes. O.S. also wrote about needing to work on a science project and fearing that, at the time for getting clothes, "my dad will pull up in the driveway and that he will do something to hurt my mom." Exhibit C, another handwritten statement from O.S., added these details:

> Friday evening around 5:00 pm me, my mom and [C.S.] went to my dad's house to go get our laptops and our clothes. We did not expect for my dad and my brother to be there. I thought they would be hunting. So [C.S.] and I went inside to get our stuff. My dad asked us what were we doing there and we both answered to get our laptops and our clothes. Then he said why can you not just leave one of the laptops over here and I said no my science stuff is on there.

He wrote about deciding to get his clothes anyway, becoming upset when his father told him to stop, going outside where his mother was waiting, and exchanging more words with his father. He concluded, "[S]even days on and seven days off is not working for me and I would like to change it."

Mr. Smith requested that the court deny the motion for reconsideration, which he called a "poorly disguised motion to modify" giving him no opportunity to conduct discovery or otherwise prepare a defense. At the outset of a hearing conducted on December 4, 2014, the court remarked that there perhaps should have been two motions. The court informed the parties that it would consider in the instant hearing only whether anything of an emergency nature had happened since the last hearing to affect the children's well being. The court told Mr. Smith that if "at some point there is a motion to modify, you're right, you'll have an opportunity to answer to discovery or whatever Ms. Neumann can appeal."

The hearing proceeded with Mr. Smith and O.S. testifying about an incident between O.S. and Mr. Smith's twenty-two-year-old son, Taylor, O.S.'s half-brother, who lived in

Mr. Smith's home. Mr. Smith testified that O.S. complained to him that Taylor had "picked on him"; that Smith later read in a text from O.S. to his mother that Taylor had slapped him; and that Smith, after talking to Taylor and O.S., had decided that the incident was "rough-housing . . . nothing to it." Mr. Smith testified that he was unaware of a warrant to arrest Taylor for domestic battery—which Smith said was a "really sorry" bullying tactic—and that he had done nothing to segregate Taylor and O.S. because there was no need. Regarding the past incident of the twins coming to his house for their clothes, he agreed that he had refused to let O.S. get his clothes and that the two of them had argued. He testified that the police had come into the house, called by Ms. Neumann. He also testified that O.S. had been suspended from school on a Thursday when the children were with him, after the date that Ms. Neumann had filed her motion for reconsideration. Smith testified that, at O.S.'s request, he did not tell Ms. Neumann about the suspension—relying instead on O.S. to tell her the following Sunday.

O.S. testified to the truth of his written statement. He testified that he had told his father about Taylor slapping him in the face; his father had said that there was no mark and that O.S. would be okay; O.S. had gone to the police at his mother's suggestion; a warrant had been issued and Taylor was not supposed to be around him; but they were still around each other. O.S. said that he was sometimes afraid of Taylor. He denied asking his father to not tell his mother about the school suspension.

The court denied Ms. Neumann's motion for reconsideration but, noting that a different court would handle the no-contact issue upon service of the warrant, issued a

temporary emergency order. Mr. Smith was ordered to ensure no roughhousing or unwanted physical contact between O.S. and his half-brother during the pendency of the criminal domestic-battery case.

Ms. Neumann brings her appeal from the modification order and the denial of the motion for reconsideration. She refers in several of her points to the circuit court's in-chambers conference with the children, which she presents as Point IV. We begin with that point, and we combine her Points V and VI before addressing her remaining points.

## I. *Appellant's Point IV–The Children's Testimony in Chambers*

Ms. Neumann contends that "the trial judge's request to meet with the twelve-year-old twins in chambers after their clear testimony on the stand" was an abuse of discretion, compounded by the court's failure to record the proceedings. She asserts that the judge requested the meeting "on his own initiative." We agree with Mr. Smith that this mischaracterizes the judge's action. Ms. Neumann filed a September 5, 2014 motion requesting that the judge "confer with the children, in chambers, to determine [their] wishes as to which parent they want to live with primarily." At the September 11, 2014 hearing, the judge made this reference to a previous conversation with counsel: "Y'all said that after you put on your testimony, y'all may want me to talk to them separately." Each party answered in the negative when the judge asked—before meeting with the children in chambers—if either objected. Clearly, Ms. Neumann requested the in-chambers conference herself and did not object when it was imminent. The conference did not originate with a request from the circuit court.

Ms. Neumann, asserting that she did not waive recording the in-chambers conference,[2] has recreated the alleged conversation and has included it in her brief as a statement of evidence. The proper procedure to follow is outlined by our rules:

> If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best means available, including his recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within ten (10) days after service upon him. Thereupon *the statement* and any objections or proposed amendments *shall be submitted to the circuit court for settlement and approval and as settled and approved shall be included in the record on appeal by the clerk of the circuit court* that entered the judgment, decree, or order from which the appeal is taken.

Ark. R. App. P.–Civ. 6(d) (2015) (emphasis added).

On March 10, 2015, after filing her appeal, Ms. Neumann filed with the circuit court her statement of evidence under Rule 6(d). On March 20, 2015, she filed in our court a "Motion to Supplement the Record and Stay Brief Time," praying in part for a stay of briefing schedule until "additional supplementation of the Court's interview with the children in chambers can be adjudicated at the trial level." Her motion informed us that her Rule 6(d) statement of the evidence had been filed in the trial court, and it asserted that additional supplementation would be necessary "after this matter has been resolved." We subsequently granted her motion—without knowing that the trial judge had specifically disapproved the

---

[2]"Unless waived on the record by the parties, it shall be the duty of any circuit court to require that a verbatim record be made of all proceedings . . . pertaining to any contested matter before the court or the jury." Ark. Sup. Ct. Admin. Order No. 4(a); *see also* Ark. Code Ann. § 16-13-510(b) (Repl. 2010) (allowing parties, with permission of the circuit court, to waive a complete record of the proceeding); *cf. Mattocks v. Mattocks*, 66 Ark. App. 77, 986 S.W.2d 890 (1999) (decided under a previous version of the statute when probate and chancery courts were separate from circuit courts).

statement of evidence because he disagreed with it. Had we known this fact, we would not have granted supplementation insofar as it concerned the statement. The better practice would have been for Ms. Neumann's counsel to have informed this court, at the first opportunity and in all candor, of the circuit court's action. Because Ms. Neumann's statement of evidence was not "settled and approved" below, it is not a part of the record and we will not consider it on appeal.

Ms. Neumann argues that at the September 2014 hearing, the trial judge clearly pressured the children into agreeing to try equal time—action that she views as evidence of the trial judge's bias. As will be discussed later in Point III, the bias argument is not preserved for appeal because it was not raised below. We also note that a trial court may interrogate witnesses, whether called by itself or a party, *see* Ark. R. Evid. 614(b), and we reiterate that Ms. Neumann requested that the court confer with the children in chambers and did not object when given the opportunity.

Ms. Neumann also asserts that at the motion for reconsideration, the judge ignored O.S.'s letter and his testimony that the equally shared time was not working for him. Any evidence of whether equal time was working went to modification of the previous order, a matter that the circuit court properly did not consider in deciding whether to take emergency measures on matters that had arisen after the previous hearing.

We need not know the entire in-chambers conversation in order to decide the merits of this appeal. Before the conference took place, the judge noted the parties' willingness for him to talk with the children in chambers after their in-court testimony. The judge remarked

after the in-chambers proceeding that the children were willing to work toward equal time with each parent, providing the substance of the in-chambers meeting. We note that a child's preference about living with a particular parent is but one factor for the circuit court to consider. *See Burr v. Burr*, 2015 Ark. App. 640, at 6–7.

For all these reasons, we hold that the court did not abuse its discretion by talking with the children in chambers after they had stated their preference in open court that Ms. Neumann become the primary custodial parent.

## II. & III. *Appellant's Point V–Custody Award* and *Appellant's Point VI–Denial of Motion for Reconsideration*

Ms. Neumann contends in Point V that the trial court clearly erred by failing to award her sole custody or primary joint custody. She contends in Point VI that, in light of material events that had occurred after the September 11, 2014 hearing, the trial court erred in not modifying joint-custody "possession times" at the reconsideration hearing.

The primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Dorrell v. Dorrell*, 2014 Ark. App. 496, at 8, 441 S.W.3d 925, 930. In deciding a petition for change of custody, the circuit court must first determine whether there has been a significant change in the circumstances of the parties since the most recent custody decree. *Schwarz v. Moody*, 55 Ark. App. 6, 928 S.W.2d 800 (1996). In deciding whether a modification of custody is in a child's best interest, the circuit court should consider factors such as the psychological relationship between the parents and children, the need for stability and continuity in the relationship between parents and children, the past conduct of the parents toward the children, and the reasonable preference

of the children. *Dorrell*, 2014 Ark. App. 496, at 8, 441 S.W.3d at, 930. The child's stated preference on custody is not binding on the trial court. *Hart v. Hart*, 2013 Ark. App. 714, at 2.

We review child-custody cases de novo, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 77, 110 S.W.3d 731, 735 (2003). Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 44, 256 S.W.3d 528, 529 (2007). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as great a weight as those involving minor children. *Dodd v. Gore*, 2013 Ark. App. 547, at 5–6.

There was somewhat conflicting evidence at the September 2014 hearing about the children's activities with each parent and each parent's involvement in extracurricular activities and medical appointments. However, it was not disputed that the parties had voluntarily expanded the visitation time awarded to Ms. Neumann under the court's standard order. As discussed earlier in our opinion, the court found that Mr. Smith had not abandoned the house, and it rejected Ms. Neumann's argument that the children spent the majority of their time with her. Finding that material changes of circumstance had occurred, that the parties could work together, and that the children needed stability in their lives, the court ordered "true joint custody" with the time to be equally split between the parties. Although the court

denied Ms. Neumann's motion for reconsideration, it issued a temporary order to ensure no unwanted physical activity between the half brothers while domestic-battery charges were pending.

We hold that the circuit court did not clearly err in the findings summarized above. Having conducted a de novo review in this case, we affirm the circuit court's order for "true" shared joint custody with time to be spent equally between the parties. *See Montemayor v. Rosen*, 2015 Ark. App. 597, at 4, ___ S.W.3d ___, ___ (noting that Act 1156 of 2013 amended Arkansas Code Annotated section 9-13-101 to state that an award of joint custody is now favored in divorce proceedings).

IV. *Appellant's Point I—Denial of Motion to Order the Sale of the Marital Residence*

Ms. Neumann contends in Point I that the trial court's refusal to order the sale of the former marital residence was an abuse of discretion and a violation of Arkansas Code Annotated section 9-12-315. We disagree.

Prior to Ms. Neumann's filing her motion to modify and petition to sell, the children spent Thursday nights at Ms. Neumann's house. According to testimony by C. S., weekends had been "on and off" between the parties, and extra weekends were with Ms. Neumann. At the time of the 2014 modification hearing, the children were living in Mr. Smith's house full time. The final modification order changed the previous awards of joint custody and visitation to "true joint custody," with the children rotating between their parents' houses at seven-day intervals. We agree with Mr. Smith that, because neither the divorce decree nor the modification depended on which party had custody, the change from sole custody in Mr.

SLIP OPINION

Smith to joint custody was not a factor to be considered in the sale of the house.

The circuit court found that Mr. Smith never ceased living in the former marital residence with the children, the relevant condition precedent to listing the home for sale under the settlement agreement and modification order of 2009; the residence was being used "in a manner for the children"; and that Smith had not abandoned it. The court properly ruled that it could not order a sale of the home but that the parties themselves could decide to do so. We hold that the circuit court did not err in its findings, and we affirm the denial of Ms. Neumann's petition to order a sale.

## V. *Appellant's Point II–Child Support*

As her second point, Ms. Neumann contends that the circuit court's refusal to order Mr. Smith to pay child support was an abuse of discretion and a violation of Administrative Order No. 10. The lack of a child-support order, however, was in accord with Ms. Neumann's alternative request that neither party be required to pay child support should the court order equal custody and time with the children. A party who received the relief she requested cannot complain on appeal. *Baker v. Baker*, 2013 Ark. App. 543, at 7, 429 S.W.3d 389, 394.

## VI. *Appellant's Point III–Bias*

Ms. Neumann contends that the trial judge's conduct and rulings mandate reversal due to demonstrated actual bias or the appearance thereof. She points to fourteen alleged instances, such as the judge's questioning of several witnesses, from the September 2014 hearing and the reconsideration hearing. She concedes that she did object or move for recusal

below.

To preserve a claim of judicial bias for review, an appellant must have made a timely motion to the circuit court to recuse. *Grunwald v. McCall*, 2014 Ark. App. 596, at 5, 446 S.W.3d 217, 221. A judge's allegedly biased or harsh remarks are not subject to appellate review if the appellant failed to object to those statements or move for the judge's recusal. *Ashley v. Ashley*, 2012 Ark. App. 230, at 3–4. Ms. Neumann asserts that she was forced to raise the issue of bias only after the "final straw" occurred, when the twins told her of an in-chambers remark by the judge favorable to their paternal grandfather. As discussed in Point IV, we will not consider "recreated evidence" from the in-chambers conference. Furthermore, the twins' statements were allegedly made after the record had been lodged on appeal. Because Ms. Neumann failed to timely object to the circuit court of any other alleged instances of bias or appearance of bias, she has waived the issue for appellate review.

We affirm on all points.

HIXSON and BROWN, JJ., agree.

*The Alford Firm*, by : *Fredye Long Alford*, for appellant.

*Jason Horton Law Firm*, by: *Jason Horton*, for appellee.