

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–15–791

| | | |
|---|---|---|
| BEVERLY NEAL | | **OPINION DELIVERED** APRIL 27, 2016 |
| | APPELLANT | |
| | | APPEAL FROM THE CLEVELAND COUNTY CIRCUIT COURT [NO. DR–2010-67-1] |
| V. | | |
| | | HONORABLE HAMILTON H. SINGLETON, JUDGE |
| LUKE NEAL | | |
| | APPELLEE | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Appellant Beverly Neal appeals the order entered on June 1, 2015, by the Cleveland County Circuit Court finding that custody of the parties' minor daughter, A.S.N., should remain with appellee Luke Neal pursuant to the agreed order entered on November 1, 2011. She argues that the trial court erred in allowing Luke to call a witness who allegedly was not revealed to her through discovery and in denying her petition for modification. We affirm.

I. *Facts*

Beverly and Luke were divorced on October 11, 2010. Custody of their one child, daughter A.S.N., was awarded to Beverly at the time of the divorce. On November 2, 2011, the parties entered an agreed order pursuant to which custody was awarded to Luke subject to Beverly's reasonable visitation. Shortly after the entry of the agreed order, Beverly moved in with Luke in November 2011, and she lived there with Luke, A.S.N., and her two older

children from other relationships—she claims continuously, but Luke claims sporadically—until May 2014.

On October 15, 2014, Beverly filed a motion for modification, alleging that the parties had reconciled after the entry of the agreed order and continued to cohabit until May 2014. She requested that the trial court order a joint-custody arrangement with respect to A.S.N. On November 12, 2014, Luke filed a response to the petition for modification and counterclaimed for child support. Beverly filed a response to his counterclaim on November 20, 2014.

A hearing was held on May 19, 2015, after which the trial court found that the "reconciliation" of the parties was not a material change of circumstances in the life of A.S.N. The trial court entered an order on June 1, 2015, providing that custody of A.S.N. should remain with Luke subject to Beverly's visitation as detailed in the November 2, 2011 agreed order. The trial court further ordered Beverly to pay Luke forty-one dollars per week in child support. Beverly filed a timely notice of appeal on June 30, 2015.

II. *Allowing Luke to Call a Witness Not Revealed to Beverly Through Discovery*

We review the trial court's decision to exclude or permit the testimony of any witness at trial under an abuse-of-discretion standard. *Steele v. Lyon*, 2015 Ark. App. 251, 460 S.W.3d 827. A trial court has broad discretion in matters pertaining to discovery, and that discretion will not be second-guessed by the appellate court absent an abuse of discretion that is prejudicial to the appealing party. *Johnson v. Bennett*, 2016 Ark. App. 24, 480 S.W.3d 870.

Arkansas Rule of Civil Procedure 26(e) (2015) provides as follows:

2

 

(e) Supplementation of Responses.

(1) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. This duty includes, but is not limited to, supplying supplemental information about the identity and location of persons having knowledge of discoverable matters, *the identity and location of each person expected to be called as a witness at trial*, and the subject matter and substance of any expert witness's testimony.

(2) An additional duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

Ark. R. Civ. P. 26(e)(1)–(2) (emphasis added).

On April 7, 2015, the trial court, through its trial-court coordinator, sent a letter to both parties' counsel setting a final hearing for May 19, 2015. The letter included the trial court's mandate regarding witnesses: "Before this hearing begins, if there are witnesses who will testify, you must furnish to the Court, the Court Reporter and any Opposing Counsel or pro se litigants a list with the witnesses' names and addresses so as to ensure everyone has complete and accurate information."

After Beverly rested her case, Luke's counsel called her first witness and that testimony was taken. Upon Luke's counsel calling her next witness, Kelsey Howard, Beverly's counsel asked if Ms. Howard was on the witness list. Luke's counsel responded that her office had faxed it to Beverly's counsel on May 6, 2015. At Beverly's counsel's request, the trial court took a brief recess, after which the following colloquy transpired:

| LUKE'S COUNSEL: | I called my office. They can go back on the machine in the history as far as May 8th, two days short of the May 6th, to see for certain that it did go. |
|---|---|

| | |
|---|---|
| THE COURT: | [Beverly's Counsel], what is your fax number? |
| BEVERLY'S COUNSEL: | My fax number is 501-224-5550. I can say that as of yesterday regarding letters from Ms. Thomason regarding witnesses, I have never seen this lady's name as a witness. I've got proof of service of various people. I've never see this document. |
| THE COURT: | Who is the witness you intend to call? |
| LUKE'S COUNSEL: | Kelsey Howard. |
| THE COURT: | She is number eleven on your witness list? |
| LUKE'S COUNSEL: | Yes, your Honor. |
| THE COURT: | The same witness list that you say was sent with your letter of May 6th? |
| LUKE'S COUNSEL: | Yes, your Honor. This was prepared for an update to the interrogatories. I've referenced in that letter that our exhibits were still being put together and they were not going to be faxed so I had to mail the exhibits at a later date. We had not identified any exhibits in our interrogatories. We talked about the exhibits on the phone. |
| BEVERLY'S COUNSEL: | We talked about the exhibits last Friday. I have not received any witness list at all. |
| LUKE'S COUNSEL: | They were mailed May 12th. |
| THE COURT: | The letter that she presents dated May 6th with your fax number on it specifically identifies the witness list. All I can say is I've dealt with [Luke's Counsel] for over twenty years as a Judge and maybe fifteen years as a lawyer and her integrity has never been questioned. You may call Ms. Howard. |

Ms. Howard was then allowed to testify. Although Luke's counsel claimed that she faxed the updated witness list to Beverly's counsel, she produced no fax-confirmation sheet, and her office was able to go back in the fax history only to May 8, 2015. Luke's counsel

had a copy of a letter that she claimed to have faxed to Beverly's counsel, but Beverly's counsel argued that as of May 17, 2015, he had not seen Ms. Howard's name on the witness list. He stated that he had proof of service of various people, but he had never seen the document. Beverly's counsel further stated that he had spoken to Luke's counsel regarding exhibits, but he had not received any witness list. The trial court's only inquiry into the matter was to ask Beverly's counsel what his fax number was.

Beverly maintains that a thorough review of the record shows that no witness list was provided to the trial court, the court reporter, or opposing counsel as mandated in the trial court's letter dated April 7, 2015. Beverly argues that Luke's counsel had a duty, which includes supplying supplemental information of the identity and location of each person expected to be called as a witness, to seasonably amend her response to an interrogatory pursuant to Rule 26(e). She also had an additional duty pursuant to Rule 26(e) to supplement this information as imposed by the trial court's mandate in its April 7, 2015 letter. She argues that Luke's counsel had the burden of providing confirmation that a fax had actually been sent with the witness list to Beverly's counsel; however, her office could not provide such confirmation, only a copy of a cover letter.

Beverly argues that the trial court improperly relied on the fact that Luke's counsel's "integrity had never been questioned" as long as the trial court had worked with her as a judge and as an attorney. Beverly acknowledges the trial court's broad discretion on this issue, but she urges that reliance alone on Luke's counsel's integrity as a professional was improper and an abuse of discretion that was prejudicial to her because she was unprepared to defend against or cross-examine the prejudicial and negative testimony of Ms. Howard.

We disagree and hold that the record indicates that the trial court considered the matter thoughtfully and exercised its discretion appropriately. The issue presented in this case is whether Luke, through his counsel, timely supplemented his witness list. Luke's counsel explained before the trial court that she did supplement the list and both faxed and mailed it to Beverly's counsel, and although Beverly's counsel contended that the list had never been received, the only witness to whom he objected was Ms. Howard—number eleven on the list of witnesses.

Luke cites Rule 3.3 of our Model Rules of Professional Conduct (2015), which is entitled Candor Toward the Tribunal:

> (a) A lawyer shall not knowingly:
> (1) Make a false statement of fact or law to a tribunal; or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

The comment text to Rule 3.3 explains,

> Representations by a Lawyer – However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.

The trial court indicated it had a long history of dealing with Luke's counsel. The trial court exercised its discretion in questioning counsel and concluded that counsel was candid about having both faxed and mailed the updated witness list and that counsel knew that was true or believed it to be true on the basis of a reasonably diligent inquiry as evidenced by her having called her office during the court's recess. We agree that trial courts should be allowed to take into consideration their familiarity with counsel over time, especially in view of Rule 3.3's candor requirement.

Moreover, Beverly provides no explanation of how Ms. Howard's testimony was so prejudicial to her as to warrant reversal in view of all the other evidence presented on the change-of-circumstances issue. Prejudicial error is not presumed, and unless appellant demonstrates prejudice accompanying error, this court will not reverse. *Smith v. Smith*, 2015 Ark. App. 539. Because Beverly has not demonstrated that the trial court abused its discretion and likewise has not shown that she was prejudiced by the witness's testimony, the trial court's decision to allow the witness is affirmed.

### III. *Denial of Beverly's Motion for Modification*

We review child-custody cases de novo, but we will not reverse a trial court's findings unless they are clearly erroneous. *Neumann v. Smith*, 2016 Ark. App. 14, 480 S.W.3d 197. Because the question whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as those involving minor children. *Id.*

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Earl v. Earl*, 2015 Ark. App. 663, 476 S.W.3d 206. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.* The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child and to discourage

 

repeated litigation of the same issues. *Id.* The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id.* In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Id.*

A. Material Change in Circumstances

Shortly after the entry of the November 2, 2011 agreed order, at which time custody of A.S.N. was placed with Luke, Beverly, A.S.N., and Beverly's two older children moved back in with Luke. Beverly claims that she and the children lived continuously with Luke from November 2011 until April or May 2014, but that assertion is disputed by the testimony of multiple witnesses. The testimony from witnesses on both sides of this issue placed before the trial court conflicting evidence as to whether there was a true, strong "reconciliation" between the parties.

After Beverly rested her case at the hearing on her petition for modification, Luke's counsel moved for a directed verdict, arguing that Beverly did not meet her burden of showing that a change in circumstances warranted a change of custody. Beverly's counsel argued that the change in circumstances was that the parties began to cohabit after the divorce and subsequent modification of A.S.N.'s custody. Beverly argued that the three children had lived together since A.S.N.'s birth, were separated, were brought back together, and were separated again. The trial court took the arguments under advisement but specifically stated that it wanted to hear what the witnesses had to say about the

 

reconciliation of the parties' relationship. The trial judge stated that "if it's not a strong reconciliation, if it's a hit or miss one time or another, then I don't think it's a change of circumstance."

At the conclusion of the hearing, the trial court found that the alleged reconciliation of the parties was not a material change of circumstances. The trial court specifically found that "the best case scenario is Beverly moved out once from November 2011 until April 2014," and "the worst case scenario is she moved out frequently or several times." Beverly argues that this "finding" did not support a finding that there was not a material change in circumstance to warrant a change in custody. Rather, she claims that the "best case scenario" language indicated that the trial court found a strong reconciliation, which would constitute a material change in circumstances.

Based on our review of the record, no other change in circumstances was alleged other than the purported reconciliation. The trial court's order, entered after the hearing, provides as follows:

> 2. Custody – [Beverly] proposed that the reconciliation of the parties is a material change of circumstances in the life of their minor child, [A.S.N.], whose date of birth is February 10, 2010. The Court disagrees. The best case scenario is that [Beverly] moved out once from November 2011 to April of 2014. The worst case scenario is that [Beverly] moved out and back several times further demonstrating the failed efforts of the parties to be a family. Even if by some stretch of the imagination that even a failed reconciliation is a change of circumstance, the Court does not believe it would be in the minor child's best interest that the custody be joint/shared. [Luke] clearly is the more stable parent and has been throughout the parties' relationship. Therefore, custody of the minor child, [A.S.N.], should remain with [Luke].

As of the date the petition for modification was filed, any attempt at reconciliation between the parties had already failed, and that remained true as of the dates of the hearing and the entry of the order from which this appeal was taken. Luke's and A.S.N.'s situations

were basically the same as of the date of the last agreed order—they were living together in Luke's home, he was continuing to work at the same job he had always worked, A.S.N. was well cared for by Luke and his mother, and Beverly had available to her exactly the same visitation that was granted to her by the last agreed order. Because the record supports that it was in A.S.N.'s best interest for the trial court to keep custody with Luke consistent with the November 2, 2011 agreed order, we decline to address whether Beverly met her burden of proof with respect to the material-change-of-circumstances issue.

## B.  Best-Interest Analysis

Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the children. *Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002). The trial court's findings regarding best interest will not be reversed unless they are clearly erroneous. *Id*.

Beverly points out that this court has held that unless exceptional circumstances are involved, young children should not be separated from each other by dividing their custody. *Sykes v. Warren*, 99 Ark. App. 210, 258 S.W.3d 788 (2007). She notes that one factor the trial court must consider in determining the best interest of the child is whether the child will be separated from his or her siblings. *Harris v. Grice*, 97 Ark. App. 37, 244 S.W.3d 9 (2006). Beverly reiterates that during the time in question, the three siblings continued to live together and to develop as brother and sisters. When Beverly and Luke eventually separated for good in April or May 2014, the two older children remained in Beverly's custody, and A.S.N. remained in Luke's custody. A.S.N. had not been separated from her older brother and sister until this time.

Beverly argues that the trial court was clearly erroneous in finding that it was not in A.S.N.'s best interest to award joint custody to the parties. She claims that A.S.N. remained closely bonded with her brother and sister, and the separation of the children had a negative impact on them and on her. Beverly urges that there were no exceptional circumstances found to support a separation of the three children. She argues that the record indicates that the respective abilities of both Luke and her to parent A.S.N. are equal. She maintains that no evidence indicated that a joint-custody arrangement would not be in the best interest of A.S.N.

We disagree and hold that the trial court did not err in maintaining A.S.N.'s custody with Luke. The record reflects that A.S.N. continues to do well with Luke, that her life is stable, that Luke maintains stable employment and a good home, and that he has an extended family—including his mother, who helps care for A.S.N. On the other hand, the evidence indicates that Beverly has had at least three different residences since she last left Luke's home, that she works only two and a half days per week at a small hourly wage—plus sporadic part-time work modeling, that she has in the past been, and apparently continues to be, somewhat promiscuous in her relationships, and that there is some question as to whether she continues to use drugs, both prescription and nonprescription.

Factors that a trial court may consider in determining what is in the best interest of a child include the psychological relationship between the parents and the children, the need for stability and continuity in the relationship between the parents and the children, the past conduct of the parents toward the children, and the reasonable preference of the children. *Bamburg v. Bamburg*, 2014 Ark. App. 269, 435 S.W.3d 6. Because there are no cases in

which the superior position, ability, and opportunity of the trial court to observe the parties

carry a greater weight than those involving the custody of minor children, our deference to

the trial court in matters of credibility is correspondingly greater in such cases. *Horton v.*

*Parrish*, 2015 Ark. App. 306, 461 S.W.3d 718.

When it adopted Administrative Order No. 15.1, our supreme court set forth factors

that an attorney ad litem should review in making a reasoned opinion on the best-interest

question. Section 5(b) provides that an attorney ad litem shall determine the best interest of

a child by considering such custody criteria as

> (1) Moral fitness factors:  integrity, character, compassion, sobriety, religious training
> and practice, a newly acquired partner regarding the preceding elements;
> (2) Stability factors: emotional stability, work stability, financial stability, residence
> and school stability, health, partner stability;
> (3) Love and affection factors: attention given, discipline, attitude toward education,
> social attitude, attitude toward access of the other party to the child, and attitude
> toward cooperation with the other party regarding the child's needs;
> (4) Other relevant information regarding the child such as stated preference, age, sex,
> health, testing and evaluation, child care arrangements; and regarding the home such
> as its location, size, and family composition.

Ark. Sup. Ct. Admin. Order No. 15.1(5)(b).

Even assuming that Beverly could prove a material change in circumstances, we hold

that a comparison of all the evidence from the multiple witnesses who testified regarding

both Beverly's and Luke's financial, employment, home-environment, and overall stability

to those factors our supreme court set forth in Administrative Order No. 15.1(5)(b), supports

the trial court's determination that it was in A.S.N.'s best interest for custody to remain with

Luke, subject to Beverly's reasonable visitation. Accordingly, we affirm.

Affirmed.

VAUGHT and HIXSON, JJ., agree.



*Emily J. Reynolds*, for appellant.

*Mary Thomason*, for appellee.