Cite as 2022 Ark. App. 450

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-22-2

| | |
|---|---|
| RACHEL CHRISSONBERRY (NOW BENFER) | Opinion Delivered November 9, 2022 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTEENTH DIVISION [NO. 60DR-12-3699] |
| V. | |
| TODD CHRISSONBERRY | HONORABLE AMY DUNN JOHNSON, JUDGE |
| APPELLEE | |
| | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Rachel Benfer appeals the Pulaski County Circuit Court order modifying the custody arrangement of her minor child (MC) with her former husband Todd Chrissonberry. On appeal, Rachel argues that the circuit court erred by finding that Todd established a material change in circumstances warranting modification of custody. She additionally argues that the court erred by ordering her to pay child support. We affirm.

Rachel and Todd married in April 2008, and MC was born in December 2010. They divorced in October 2012, and pursuant to their divorce decree, they agreed to share joint custody of MC.

On January 27, 2020, Todd moved to modify custody and child support, alleging that there had been a material change in circumstances since the divorce and that it was in MC's

best interest for him to have full custody. He claimed that MC feared Rachel and had made allegations of physical and emotional abuse against her. He further stated that the Arkansas Department of Human Services (DHS) had investigated the allegations and that Rachel had refused to take MC to counseling as DHS ordered. He also asserted that MC's school performance suffered during Rachel's weeks and that Rachel was engaged to Johnny Propst, who has felony convictions for domestic battery and drug offenses.

On May 11, Rachel also moved to modify custody and child support, alleging that there had been a material change in circumstances since the divorce and that it was in MC's best interest for her to have full custody. She stated that Todd had made an unfounded DHS complaint and police report about her alleged abuse of MC. She also stated he had alienated MC from her. She further claimed that he had refused to return MC to her custody and had refused to communicate with her about MC.

On July 15, the court entered an agreed temporary order awarding Todd custody of MC with Rachel having supervised visits at the parties' discretion.

On May 25, 2021, the court held a hearing on the competing motions. Todd testified that he had been married to his current wife, Amber, since April 2019. He explained that in November 2019, MC began exhibiting emotional changes that made him concerned about her living with Rachel. He stated that MC appeared reserved and afraid to go to Rachel's house. Todd testified that he also worried about Rachel's relationship with Johnny Propst.

Todd further testified that in April 2020, he found bruises across MC's lower back and that he thereafter refused to return MC to Rachel's custody. He believed MC had been

abused while in Rachel's care, and he was concerned for MC's safety in Rachel's home. He explained that he reported the injuries to DHS and the sheriff's office.

Todd explained that during the custody proceedings, his and Rachel's communication had been poor. He stated that he had not responded to Rachel's inquiries about MC's visitations because he wanted MC—with assistance from her therapist—to make the decision to visit Rachel.

On cross-examination, Todd acknowledged that MC was hospitalized in June 2020 with suicidal ideations and that he did not inform Rachel about the hospitalization. He further admitted that he did not inform Rachel when he married Amber.

Amber Chrissonberry testified that she and Todd have a great relationship with MC and that MC had adjusted to being in their home full time. She further stated that Todd had taken MC to therapy every week and had been involved in her activities. She explained that in April 2020, she and Todd discovered bruising on MC's back, and she reported MC's injuries to DHS.

Serena Crone testified that she was married to Todd from July 2016 through March 2017. She stated that Todd is dishonest and that Rachel had always been concerned for MC's safety.

Rachel testified that DHS had investigated her on two occasions for abuse allegations made by MC. She stated that in the first investigation, DHS found MC's accusations unsubstantiated. Rachel explained that around that time, she was divorcing her second husband, Joe Benfer, and that they had been fighting "quite a bit." She did not know her

relationship with Joe had affected MC. She testified that DHS had not ordered her to enroll MC in therapy and that DHS could not provide MC with therapy due to the unsubstantiated finding. She testified that she attempted to enroll MC in counseling, but she had difficulties obtaining the insurance information from Todd.

Rachel testified that in the second DHS investigation, DHS again found MC's abuse claim unsubstantiated. Rachel denied ever striking MC with an object or punching her. Rachel stated that Todd had coerced MC to make the abuse accusations.

Rachel testified that she believes Todd sought full custody of MC because he does not like her fiancé, Johnny. Rachel explained that Johnny has a criminal history, but he had "served his time." She stated that he is on parole and has monthly drug tests, and she testified that MC has a good relationship him. She noted that she and Johnny have a daughter, who was born in January 2021, and that she has another daughter with her second husband, Joe.

Rachel testified that Todd speaks negatively about her to MC and prohibits their contact. She stated that before the custody proceedings, she and MC had a wonderful relationship, but it is now strained. She recalled Todd refusing her contact with MC on about sixty occasions.

On cross-examination, Rachel testified that MC had lied about the abuse allegations, and she doubted that MC witnessed her disagreements with her former husband Joe. She stated that she would need "actual proof that something bad [had] happened to [MC] and not just [MC] saying it." She further detailed her relationship timeline—she divorced Joe in

4

October 2019, she started dating Johnny in November 2019, and she got engaged to Johnny in January 2020. She noted that Johnny had been released from prison in June 2019.

Rachel further explained that in the first DHS investigation in 2019, DHS made a true finding for environmental neglect because her house was "dirty." She testified that she participated in the DHS case and improved the home. DHS then "deemed [the case] as Do Not Defend." Rachel also acknowledged that even though DHS had not ordered counseling for MC, DHS had encouraged it.

At the hearing, Rachel introduced a DHS maltreatment summary report dated January 30, 2020. The report lists MC as the alleged victim, Rachel as the alleged offender, and Amber and Todd as the referrals. The findings were unsubstantiated for striking a child on the face but true for environmental neglect. The interview notes show that MC had reported that she is afraid of her stepfather Joe Benfer and that he and Rachel frequently fought. MC further reported that Joe had punched a hole in a door and had chased Rachel around the home.

She also introduced a DHS maltreatment summary report dated June 8, 2020. The report again lists MC as the alleged victim, Rachel as the alleged offender, and Amber and Todd as the referrals. The allegations against Rachel included extreme or repeated cruelty; kicking a child; cuts, bruises, or welts; and striking a child on the face or head. DHS made a true finding for cuts, bruises, or welts, but it found the other claims unsubstantiated. The interview notes show that MC reported that Rachel hit her with a curtain rod on her legs,

5

back, and arm and that Rachel had hit her in the face with her fist. MC also reported that Johnny Propst had hit her with a belt, pushed her to the ground, and locked her in a closet.

Rachel further introduced a November 12, 2020, DHS order reversing the June 2020 true finding. In the order, the administrative law judge concluded that there was insufficient evidence to show that Rachel "abused MC by causing nonaccidental physical injury that was not the result of reasonable and moderate physical discipline." The ALJ found that "the disclosure made by MC, that her mother hit her repeatedly with a curtain rod and switches to be inconsistent and unreliable." Accordingly, the ALJ ordered that Rachel's name not be listed on the Arkansas Child Maltreatment Central Registry.

At the conclusion of the custody hearing, the attorney ad litem submitted his recommendation that the court award Todd full custody of MC. The ad litem reported that MC preferred living with Todd and that MC hoped to attend counseling with Rachel and to participate in unsupervised day visits. The attorney ad litem further recommended that MC have no contact with Rachel's fiancé, Johnny.

The ad litem also introduced two videos of MC discussing the abuse allegations against Rachel—a forensic video of MC at the child advocacy center and a cell-phone video taken by Todd.

Following the hearing, on June 23, 2021, the circuit court entered an order modifying the custody arrangement. The court found that "both parties have engaged in conduct that created a material change in circumstances warranting a modification of custody." As to Rachel, the court found that "her divorce from Mr. Benfer, her subsequent cohabitation

with a convicted felon a very short time later, and the conflict that [MC] has witnessed between [Rachel] and each of her partners created significant stress for [MC] and made her fearful of being in [Rachel's home.]" The court further found that Rachel dismissed MC's distress and that she prioritized her current relationships over MC's well-being. As to Todd, the court found "his unilateral decision to deny [Rachel] visitation, thereby alienating her from [MC], as well as his complete failure to communicate with [Rachel] about [MC]'s well-being constituted a material change of circumstances."

The court then concluded that it was in MC's best interest for Todd to have full custody. In making this determination, the court acknowledged Todd's fault in creating the circumstances. However, the court noted Rachel's dismissal of MC's emotional distress, and it concluded that Todd "had demonstrated a willingness to ensure that [MC] receives the services that she needs in order to heal from the emotional harm that she has suffered and to repair her relationship with [Rachel]." Rachel appealed the order to this court.

We review child-custody cases de novo but will not reverse a circuit court's findings unless they are clearly erroneous. *Grindstaff v. Strickland*, 2017 Ark. App. 634, 535 S.W.3d 661. Because the question whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving minor children. *Id.*

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Rice v. Rice*, 2016 Ark. App. 575, 508 S.W.3d 80. A judicial award of custody will not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree will be in the best interest of the child. *Id.* Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.*

To change custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody; the party seeking modification has the burden of showing a material change in circumstances. *Earl v. Earl*, 2015 Ark. App. 663, 476 S.W.3d 206. If that threshold requirement is met, the circuit court must then determine who should have custody, with the sole consideration being the best interest of the children. *Id.*

On appeal, Rachel argues that the circuit court erred by finding that Todd established a material change in circumstances warranting modification of custody. She points out that DHS found MC's abuse allegations not credible, and she argues that there was no evidence that MC was harmed in her home. She asserts that Todd influenced MC to make the abuse allegations. She further claims that there was no evidence that MC's performance at school had suffered, and she argues that the concerns with Joe Benfer are irrelevant because they divorced in 2019.

We hold that the circuit court did not err by finding that Todd established a material change in circumstances. The evidence showed that Rachel had multiple relationships since

8

the divorce and that there was conflict in her relationships. Further, even though DHS ultimately found the abuse allegations against Rachel unsubstantiated, the conclusion does not negate a change-in-circumstances finding in this proceeding. The evidence showed that MC was fearful of being in Rachel's home, and the ad litem reported that MC no longer wanted to live with her. *See Earl*, 2015 Ark. App. 663, 476 S.W.3d 206. Given these circumstances, our standard of review, and the deference we give circuit courts to evaluate the witnesses, their testimony, and the child's best interest, we are not left with a definite and firm conviction that the circuit court made a mistake by finding that Todd established a material change in circumstances.

Rachel also claims that she met her burden of proving a material change in circumstances warranting modification of custody based on Todd's behavior. A party who received the relief she requested cannot complain on appeal. *Neumann v. Smith*, 2016 Ark. App. 14, 480 S.W.3d 197; *Baker v. Baker*, 2013 Ark. App. 543, 429 S.W.3d 389. The circuit court found that both parties engaged in conduct that created a material change in circumstances warranting modification of custody, and it cited Todd's unilateral decision to deny Rachel visitation and his failure to communicate with Rachel. Thus, the court found that Rachel had established a material change in circumstances based on Todd's behavior, and Rachel cannot establish an error on this point.[1]

---

[1]The circuit court then determined that it was in MC's best interest for Todd to have full custody, but Rachel does not challenge the court's best-interest finding.

Rachel's final argument is that because the circuit court erred by awarding full custody to Todd, the court also erred by ordering her to pay child support. Because we find no error by the circuit court in awarding Todd full custody, we find no error by the court in ordering Rachel to pay child support.[2]

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Law Offices of Peter Miller*, by: *Jessica Virden Mallett*, for appellant.

*Lion Legal Services*, by: *Kristy Sims*, for appellee.

---

[2]In his appellate brief, Todd asks this court to dismiss Rachel's appeal because it is frivolous and contrary to well-established law. He additionally requests attorney's fees. We deny his requests.