Cite as 2022 Ark. App. 83

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-21-171

| | |
|---|---|
| RAYMOND JOE EVANS<br>APPELLANT | **Opinion Delivered** February 23, 2022 |
| V. | APPEAL FROM THE LOGAN<br>COUNTY CIRCUIT COURT,<br>SOUTHERN DISTRICT<br>[NO. 42BDR-11-32 ] |
| JANET JONES CARPENTER<br>APPELLEE | HONORABLE DAVID H.<br>MCCORMICK, JUDGE |
| | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

This appeal is from an order modifying child custody by changing primary custody from appellant Raymond Joe Evans to appellee Janet Jones Carpenter. The appealed order also held Evans in contempt. On appeal, Evans is challenging both of those rulings as well as an intermediate order denying his motion for change of venue.[1] We affirm.

The parties were divorced by a decree entered by the Circuit Court of Logan County, Arkansas (hereinafter referred to as "the circuit court"), on April 7, 2011. The divorce decree granted custody of the parties' two sons to Carpenter. A subsequent agreement between the parties allowed Carpenter to relocate to Arizona with the children. On October 11, 2016, the Superior Court of Pinal County, Arizona, entered an order

---

[1]Even though Evans did not immediately appeal the order denying his motion to change venue, our court may review it pursuant to Rule 2(b) of the Arkansas Rules of Appellate Procedure–Civil.

modifying custody and granting custody to Evans. The circuit court adopted the Arizona order as its own on November 28, 2016. This order, with later modifications by the circuit court, governs the rights and obligations of the parties.

The initial decree is not included in the record on appeal. However, aspects of the Arizona order are important and, in fact establish the foundation for the issues in this appeal. Poor communication and lack of cooperation between the parties were the primary material changes in circumstances noted by the Arizona court justifying a change in custody. The Arizona court, after finding that Evans was better suited to foster a relationship between the children and both parents, awarded primary custody to him. To that end, while custody and decision making were granted to Evans, the court found that Carpenter was "entitled to reasonable parenting time to ensure that the minor child[ren] ha[ve] substantial, frequent, meaningful and continuing contact with" her. Further, the court held that Evans's custody of the children "does not allow [him] to alter unilaterally the . . . court-ordered parenting time plan."

A key part of that parenting-time plan was that Carpenter "shall have one-half hour telephone/skype visits 3 times per week at a time reasonably determined by the parties" when the children were not with her. Moreover, the plan stated that "[n]either parent shall plan activities for the children that may interfere with the other parent's scheduled parenting time, unless previously agreed to by the other parent." Both parents were to have access to all medical and educational information regarding the children. "A parent who attempts to restrict the release of documents or information by the custodian, without prior court order, is subject to appropriate legal sanctions." Both parents were given "the right to participate in school conferences, events, and activities (including extra-curricular), and the right to

2

consult with teachers and other school personnel." Specifically, "both parents shall be listed as emergency contacts on any forms that require contact information such as, but not limited to, education, activities, childcare, and medical providers." These provisions allowed both parents to participate equally in the educational, medical, and extracurricular aspects of the children's lives, but it soon became apparent that the communication between the parties deteriorated quickly with both Evans and Carpenter filing separate motions.

On January 28, 2019, Carpenter filed a petition for contempt and to change custody. The circuit court and the Arizona court conferred and determined, on the basis of the UCCJEA, that Arkansas was the home state of the children; thus, the circuit court was vested with the power to act in the case. A hearing was held on July 23, and in an order entered on December 5, the circuit court resolved all pending motions and issues and made modifications to the Arizona order. The communications issues noted by the Arizona order had not improved. Electronic communication was the only way the parties would address one another. The Arizona court's order that e-mail would be the primary method for that communication was modified to make a software application called "Our Family Wizard" the primary method. Our Family Wizard is an application containing a "tone meter" to minimize hostility between parents. These motions are not part of the record on appeal nor is the December 5 order.

The parties were back before the circuit court for a hearing on February 6, 2020. That hearing resulted in an order entered on March 23 that denied Evans's motion to transfer venue and also denied Carpenter's motion to change custody.

That March 23 order also found Evans in contempt for the following: failing to provide releases; failing to allow scheduled Skype sessions; failing to provide weekly reports

to Carpenter as required by prior orders; and interfering with the communication between the children and Carpenter during Skype sessions. Evans was ordered to provide contact information for all of the children's schools, teachers, and school counselors and medical, dental, and mental-health providers and to execute releases and consents to allow Carpenter to communicate with them immediately. As a result of the court's finding of contempt, Evans was also ordered to pay $1,500 of Carpenter's expenses and $2,500 of her attorney's fees within thirty days of the entry of the order—by April 22, 2020.

On June 5, Carpenter filed a petition for contempt and for change of custody, alleging that Evans had not provided the releases as ordered by the March 23 order. Carpenter further contended that Evans was not following the court's order with respect to Skype communications. It also alleged other issues involving discord toward the children in Evans's home by Evans's wife and stepdaughter. Finally, it alleged Evans had not made the payments for Carpenter's expenses and attorney's fees as ordered.

On July 23, Evans again formally moved to transfer venue pursuant to Arkansas Code Annotated section 9-12-320 (Repl. 2020). He argued that a transfer of venue was justified by Arkansas Code Annotated section 9-12-320(a)(2)(A)(i) and (ii).

A hearing was held on the motion to transfer venue on August 6. Evidence was taken regarding the location of witnesses, the convenience of trying the case in Garland County, Arkansas, where Evans had moved as opposed to Logan County, Arkansas, and the travel time for Carpenter to one county as opposed to the other. The circuit court denied the motion largely because Carpenter's petition raised issues regarding compliance with the circuit court's prior orders and the circuit court's knowledge of the case and the parties. The circuit court was also concerned that the COVID-19 pandemic would cause delay in

4

resolution of the issues. A written order denying the motion to transfer venue was entered on August 26, 2020.

On December 28, a hearing on Carpenter's petition for change of custody was held. The evidence showed that Evans did not provide Carpenter with new releases as ordered in the February 6 hearing or the March 23 order. He initially sent the Our Family Wizard message quoted in her petition telling her new releases would be forthcoming when the old releases expired. Later in March 2020, he sent her the same releases the circuit court had previously determined to be invalid. Evans did not send valid releases until September 2020.

As for the Skype sessions, between February 6, 2020, and the date of the hearing on December 28, 2020, on nine occasions, the Skype sessions were not conducted at all. Other times only one of the children was present. Still other times, so much background noise was present that the sessions were significantly impaired and not conducive for good visits. Evans admitted that sessions were sometimes not conducted because he was away from home with the children, and the service on his phone was not sufficient to make the connection. He also admitted that on at least two occasions, he allowed one child or the other to be away when the Skype session was scheduled. One child testified that Evans and his wife still monitored the Skype sessions from time to time.

The evidence as to the payment of fees and expenses was uncontested. Evans did not make either payment by the April 2020 date ordered. Rather, he dated checks on July 1, 2020, and mailed them on July 22, 2020. The children both testified to issues beyond the order violations noted above. The relationship between Evans's wife and the children was deteriorating, with fighting and disagreements occurring frequently.

5

In an order entered on December 30, 2020, the circuit court found in favor of Carpenter and granted custody to her. The order also found Evans in contempt for failing to allow Skype communication as ordered and for failing to pay fees and expenses as ordered. Evans now appeals that order as well as the order denying his motion to change venue. The appeal is properly before our court.

We affirm the circuit court's rulings. On appeal, Evans first argues that the circuit court erred in denying his motion to transfer venue. Arkansas Code Annotated section 9–12–320(a)(2)(A)(ii) provides, "[T]he decision to transfer a case is within the discretion of the court where the final decree of divorce was entered." For the first time on appeal, Evans contends that the statute creates a presumption in his favor. This is reviewed de novo by our court.

The venue-transfer statute reads, in relevant part,

(a)(1) The court where the final decree of divorce is rendered shall retain jurisdiction for all matters following the entry of the decree.

(2)(A)(i) Either party, or the court on its own motion, may petition the court that granted the final decree to request that the case be transferred to another county in which at least one (1) party resides if, more than six (6) months subsequent to the final decree:

(*a*) Both of the parties to the divorce proceedings have established a residence in a county of another judicial district within the state; or
(*b*) One (1) of the parties has moved to a county of another judicial district within the state and the other party has moved from the State of Arkansas.

(ii) The decision to transfer a case is within the discretion of the court where the final decree of divorce was rendered.

(B) The case shall not be transferred absent a showing that the best interest of the parties justifies the transfer.

(C) In cases in which children are involved and a justification for transfer of the case has been made, there shall be an initial presumption for transfer of the case to the county of residence of the parent.

(D) Justification for transfer of a case may be based on the establishment of residence by both parties in a county or state other than the county where the final decree of divorce was rendered.

Ark. Code Ann. § 9-12-320(a).

However, Evans's presumption argument is not preserved for appellate review. At no point did the issue of any presumption contained in Arkansas Code Annotated section 9-12-320(a)(2)(C) arise during the hearing. The "initial presumption" portion of the statute was not quoted or argued in Evans's motion to transfer venue. Nor was it argued in the venue hearing. Evidence was taken regarding the location of witnesses, the convenience of trying the case in Garland County as opposed to Logan County, and the travel time for Carpenter to one county as opposed to the other. It is a basic rule of appellate procedure that a party cannot change arguments on appeal and that we will not address arguments that were not raised below. *Holloway v. Stuttgart Reg'l Med. Ctr.*, 62 Ark. App. 140, 970 S.W.2d 301 (1998).

Because the argument was not raised to the circuit court, no ruling was made on it. It is an appellant's responsibility to obtain a ruling to preserve an issue for appeal. *Miller v. Ark. Dep't of Fin. & Admin.*, 2012 Ark. 165, 401 S.W.3d 466. In order to preserve an issue for appeal, the appellant must specifically raise the argument relied on to the circuit court, develop the argument there, and obtain a ruling on the argument. The failure to obtain a ruling on an argument precludes appellate review because there is no lower court order on the issue for this court to review on appeal. *Id.* (citing *Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 372 Ark. 190, 272 S.W.3d 91 (2008)). Because Evans did not make the presumption

7

argument to the circuit court and the circuit court did not specifically rule on the issue, we are precluded from addressing the merits of Evans's argument on appeal.

Evans's appellate arguments regarding the circuit court's contempt and custody decisions are intertwined. He maintains that the circuit court erred in finding that he was in contempt regarding the releases and Skype calls and further erred in finding that a material change in circumstances existed. He also argues that the circuit court committed clear error when it failed to find that the best interest of the minor children required a change of custody to Carpenter. We do not find his arguments persuasive.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Harris v. Harris*, 2010 Ark. App. 160, at 13, 379 S.W.3d 8, 16. However, the law is clear that "magic words" like "best interests of the children" are not required to support a modification-of-custody order. *See Baber v. Baber*, 2011 Ark. 40, at 11, 378 S.W.3d 699, 705. We have long held that when it is clear to the appellate court that the circuit court considered the best interest of the children, we will not require the use of those magic words. *See, e.g.*, *Guest v. San Pedro*, 70 Ark. App. 389, 394, 19 S.W.3d 62, 65 (2000) (stating that the court would not require use of the words "best interest of the child" when it was obvious that the chancellor considered the child's best interest). Such is the case here.

While it is true that a change in custody cannot be used to punish a noncompliant parent, *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003), if the noncompliance with an order also works to bring about a material change in circumstances that affects the welfare of the children, the noncompliance can be at least a factor supporting the decision to alter custody. Our court has also held that repeated violations of orders that have a

8

negative effect on the children support a change in custody even as a first step without a prior order holding a noncompliant parent in contempt. *See Grindstaff v. Strickland*, 2017 Ark. App. 634, at 11–12, 535 S.W.3d 661, 668–69. While Evans did not abuse drugs or alcohol in violation of a court order, when viewed in light of the history of this case together with the remainder of the proof in front of the circuit court, the actions here are sufficient evidence to support the circuit court's decision that material changes in circumstances affecting the welfare of the children justified a change in custody.

Our analysis begins with the Arizona order. It found a lack of communication was undermining the parent-child relationship and that Evans would have custody because he was in the better position to foster a relationship between the children and both parents than Carpenter had been when she was the custodial parent. But significant boundaries were erected inside of which he had to operate. One was the parenting-time plan with the multiple weekly Skype sessions, which maintained significant contact between Carpenter and the children. Another was that Carpenter was to have complete and equal access to all educational and medical information. The obvious purpose of this provision was to allow her to obtain the information every parent needs to be an informed parent.

These are not trivial provisions as Evans makes them out to be. They are part of the parenting plan for rearing these two children put in place by the Arizona order and adopted by the circuit court. Not following them or undermining them would also undermine the parent-child relationship, work a material change in circumstances, and be contrary to the best interest of the children. The provisions were undermined by Evans from the beginning. The order on appeal was the third court order holding that Evans had failed to abide by the provision requiring Skype sessions. This was so even though the Arizona order directed,

and the circuit court adopted, that "[n]either parent shall plan activities for the children that may interfere with the other parent's scheduled parenting time, unless previously agreed to by the other parent."

Likewise, once it became necessary for releases to be obtained to provide Carpenter access to educational and medical information, Evans failed to provide them. When he was ordered to provide new releases following the February 2020, hearing, rather than doing so, he first told Carpenter he would provide new ones when the old ones expired. Then he simply gave her the same releases again. Thus, he deprived Carpenter of the tools she needed—the tools the Arizona order as modified by the circuit court said she would have—to gather necessary information.

Moreover, the violations of the orders were not the only evidence of material changes affecting the welfare of the children presented to the circuit court. The children testified to being called liars, told to go to hell, and told they were not wanted by their stepmother and stepsister. Their stepsister had pushed one of them into a door frame. They had been locked out of a food pantry as punishment. They testified to waking up to fighting and arguing in the mornings and that their relationship with their stepmother was poor, with significant fighting and disagreement. This fighting included Evans's slamming one of the children's necks into a bed.

This is the sort of discord that we have held contributes to material changes affecting the welfare of children. *E.g.*, *Johnson v. Arledge*, 258 Ark. 608, 527 S.W.2d 917 (1975). The children complained of roaches and cat poop in their shared room. The situation for the children was so dire that one of them contemplated running away. They both preferred to live with their mother.

This evidence, together with the breaches of the release and Skype requirements, is ample evidence to support a finding of material changes affecting the welfare of the children. Even absent any "magic words" in the circuit court's order, it supports the conclusion reached; accordingly, we affirm the circuit court's custody modification.

Finally, we turn to Evans's argument that the circuit court's contempt finding should be reversed. Whether the contempt is civil or criminal, "[b]efore one can be in contempt for violating a court's order, the order must be definite in its terms, clear as to what duties it imposes, and expresses in its commands." *Doss v. Miller*, 2010 Ark. App. 95, at 4, 377 S.W.3d 348, 352. We affirm if the decision is supported by substantial evidence, viewing the record in the light most favorable to the circuit court's decision. *Id.* In order to establish contempt, there must be willful disobedience of a valid order of a court. *Holifield v. Mullenax Fin. & Tax Advisory Grp., Inc.*, 2009 Ark. App. 280, at 3, 307 S.W.3d 608, 610.

Here, the orders at issue could not be clearer, nor could the evidence that Evans violated them. The Skype sessions were to be held on fixed days at fixed times, and nothing was to be scheduled that interfered with them. Yet, on nine different occasions from February to December 2020, Evans admittedly failed to have the children in a place where the sessions could be conducted. Further, he allowed one child or the other to be elsewhere on at least two other occasions. Following the February 2020 hearing, the court ordered Evans to provide new releases to Carpenter. He did not do so. Evans eventually provided the same releases that were determined to be noncompliant in the February 2020 hearing, but that did not satisfy the court's order.

Moreover, Evans did not pay what he was ordered to pay after the circuit court ordered him to do so. He never sought relief from the circuit court due to an inability to

11

pay. We hold that these are all violations of clear, direct orders and are sufficient to support the contempt citation. Accordingly, we affirm.

Affirmed.

GLADWIN, J., agrees.

HARRISON, C.J., concurs.

**BRANDON J. HARRISON, Chief Judge, concurring**. No appellate court has interpreted Ark. Code Ann. § 9-12-320 (Repl. 2020) in a child-custody context. The majority passes on that opportunity today. But the main venue issue was presented to the circuit court in a manner sufficient to preserve it for appeal. I would reach the merit of Carpenter's argument that the court misapplied the statute to a custodial parent. That said, on its merit, the court's discretionary decision to deny a transfer on this record was not reversible error. So the denial should be affirmed.

*Edwin G. Dooley, Jr.*, for appellant.

*Danielson Law Firm*, by: *Elizabeth Danielson*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee.