Cite as 2023 Ark. App. 183

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CV-22-239

| | |
|---|---|
| DAVID BRITO<br><br>APPELLANT<br><br>V.<br><br>OFFICE OF CHILD SUPPORT ENFORCEMENT AND RAQUEL DUNNING<br><br>APPELLEES | **Opinion Delivered** April 5, 2023<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72DR-21-569]<br><br>HONORABLE DIANE WARREN, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

David Brito appeals the Washington County Circuit Court's order denying his motion for paternity testing. In the December 17, 2021 order, the circuit court found that Brito is the legal father of MC and that paternity was established. The court further ordered that all previous orders regarding child support would remain in effect. The court also found that Brito was "not entitled to paternity testing." On appeal, Brito acknowledges that the circuit court denied his motion to set aside an acknowledgement of paternity and order paternity testing because he failed to prove that he signed the acknowledgment of paternity for MC on the basis of a mistake of fact but argues that the circuit court erred in denying his motion for paternity testing. We affirm.

On April 22, 2021, Brito filed a petition for paternity testing. The petition asserted that Brito and appellee Raquel Dunning "were never married but engaged in a romantic

relationship which ended in 2016 but during which led to the birth of one (1) minor child," who was born in 2011. The petition further stated that Dunning held out MC as Brito's biological child, including, but not limited to, placing Brito's name on the child's birth certificate and assigning her rights to the Office of Child Support Enforcement (OCSE). Brito asserted that he "reasonably believed" that MC was not his biological child and requested DNA testing to prove or disprove paternity.

On April 28, 2021, OCSE moved to intervene in the case, and an order granting OCSE's intervention was entered on June 30, 2021. In a separate motion also filed on April 28, OCSE prayed that Brito's motion for paternity testing be denied because the court could grant Brito's motion only upon an allegation of fraud, duress, or material mistake of fact pursuant to Arkansas Code Annotated section 9-10-115 (Repl. 2020), none of which had been pled by Brito. OCSE attached to the motion as an exhibit the acknowledgement of paternity executed by Brito and Dunning on March 2, 2012, in which Brito certified that he is MC's biological father.

In another motion filed April 28, OCSE, as Dunning's assignee, pled for child support from Brito, alleging that Brito is MC's father. On June 2, OCSE moved for default judgment against Brito. In an order entered on June 30, the circuit court found that Brito is MC's father and ordered him to pay $415 a month in child support.

On October 8, Brito filed a petition to modify, for DNA testing, and for a hearing. In the petition, Brito acknowledged that he had executed the acknowledgement of paternity for MC and that the court had ordered him to pay child support. Brito asserted that he executed the acknowledgment of paternity on the basis of a "material mistake of fact and/or

2

fraud" because Dunning had initially indicated that MC was Brito's biological child but later indicated to him that MC was not his child and that Dunning wanted Brito to have MC's name changed on the birth certificate.

A hearing was held on December 1, 2021. At the hearing, only Brito testified. Before taking testimony, the circuit court stated, "So I believe the issue we need to take up is whether or not there was some mistake or fraud . . . that was incurred at the signing of the affidavit of acknowledgment." Brito's attorney agreed with the court's characterization. The court further stated that it was Brito's burden to move forward with regard to the issue of whether there was a mistake, to which Brito's attorney agreed.

Brito testified that he met Dunning in 2009 or 2010 and had a relationship with her for four to five years. He acknowledged that his petition stated that he was first told by Dunning that he is MC's father and that she later told him he is not the father and to have the birth certificate changed. He testified that, to his knowledge, Dunning had not changed her position that he is not MC's father. He also acknowledged that if he had known he is not the father, he would not have signed the acknowledgment of paternity. He testified that he does not believe he is MC's biological father, and he requested DNA testing. Brito testified that he would pay child support if scientific testing established that he is the father. He further testified that Dunning told him, while they were living in Springdale, that MC's father is Wilfredo Mendoza. Brito submitted as evidence text messages between him and Dunning.

On redirect examination, Brito testified that he signed the acknowledgement of paternity because Dunning told him that he is the father and he believed her, but then she

later told him that he is not the father and wanted his name off the birth certificate. He testified that when she said that to him, he did believe her. Upon further questioning, Brito testified that he has not had any relationship with MC because Dunning had stopped him from having visitation when she started dating another person, and she wanted that person to be MC's father. Brito testified that he is willing to see MC, but Dunning had completely stopped him from having visitation rights.

In its ruling from the bench, the circuit court stated as follows:

The Court finds that the petitioner has not met his burden of proof to prove that there was a mistake of fact at the time of signing the acknowledgment of paternity. The testimony of Mr. Brito was that at the time in 2016 or in 2011 when the child at issue was born that he suspected his partner was being unfaithful and he read the acknowledgment of paternity, which advises the person signing of the consequences of signing the acknowledgment and despite his suspicions or questions, he signed the document knowing and understanding its import and the time is well past for the additional five years after the acknowledgment was signed, he raise[d] the child as if he were her father and the testimony today was that even after the split, he attempted and has tried to visit with the child and has only not continued to have a relationship with the child because of the actions of the mother. So the Court finds that there was—that the petitioner has not met his burden of proof that there is a mistake of fact that would overcome the consequence of signing the acknowledgment of paternity. Therefore, the finding of paternity that was established by Mr. Brito signing the acknowledgement of paternity at the birth of child still stands. He is the legal father to the child. He has the obligation to financially support the child and he is also entitled to visitation and a participation in the child's life, given that he is the father. So Mr. Brito, the bad news is the Court's finding that you're obligated to pay child support. The good news is the Court also finds that you have a right to a relationship with MC.

Brito's appeal is now properly before this court. On appeal, Brito asserts that the circuit court erred by not sua sponte raising and ruling upon two additional grounds for setting aside the acknowledgment of paternity executed by him—namely, fraud or duress. He argues, "As the court's bench ruling and the written order make clear, the decision was based entirely upon the question of whether there had been a mistake of fact. That was the

4

only factor considered." OSCE contends that it was Brito's burden to argue and develop the issues of fraud and duress before the circuit court and then obtain a ruling from the circuit court on the issues. OCSE maintains Brito's failure to argue and develop the issues to the circuit court and obtain a ruling precludes appellate review.

Brito further argues that the circuit court erred in denying his motion to set aside the acknowledgement of paternity and order paternity testing based on a mistake of fact. OCSE contends that Brito did not carry his burden of establishing a mistake of fact and that the circuit court's decision was therefore not clearly erroneous. As such, OSCE maintains that the circuit court's decision should be affirmed.

The burden of proof is on the person challenging the establishment of paternity. Ark. Code Ann. § 9-10-115(d)(2) (Repl. 2020). Decisions rendered on matters of equity are reviewed de novo on appeal and are not reversed unless the appellate court finds that the circuit court's decision is clearly erroneous or clearly against the preponderance of the evidence. *See, e.g.*, *Emis v. Emis*, 2017 Ark. App. 372, at 3, 524 S.W.3d 444, 447. Due deference is given to the circuit court in judging the credibility of the witnesses. *Id.*

Pursuant to statute, any signatory to a voluntary acknowledgment of paternity may rescind the acknowledgment. Ark. Code Ann. § 9-10-115(c) (Repl. 2020). The rescission, however, must be prior to the date that an administrative or judicial proceeding, including a proceeding to establish a support order, is held relating to the child and the person executing the voluntary acknowledgment of paternity is a party; or within sixty days of executing the voluntary acknowledgment of paternity, whichever date occurs first. Ark. Code Ann. § 9-10-115(c)(1)–(2).

Brito does not suggest that the rescission would occur within these time frames. Pursuant to the statute, if the rescission occurs beyond these limitations, a person may challenge a paternity establishment pursuant to a voluntary acknowledgment of paternity or an order based on an acknowledgment of paternity only upon an allegation of fraud, duress, or material mistake of fact. Ark. Code Ann. § 9-10-115(d)(1). Thus, subsection (d) requires Brito to establish fraud, duress, or a mistake of fact.

We first turn to the fact that Brito's arguments that the acknowledgement of paternity should be set aside because it is based on fraud or duress are not preserved for our court's review. It has long been held that an appellate court will not take up issues raised and developed for the first time on appeal. *See, e.g., Watt v. Office of Child Support Enf't*, 364 Ark. 236, 242, 217 S.W.3d 785, 788 (2005); *Henyan v. Peck*, 359 Ark. 486, 494, 199 S.W.3d 51, 55 (2004); *Brown v. Shipley*, 2022 Ark. App. 246, at 10; *Evans v. Carpenter*, 2022 Ark. App. 83, at 7, 642 S.W.3d 235, 240.

Moreover, we cannot reach these arguments because, as Brito admits, he never obtained a ruling on the issues. It is well established that the burden of obtaining a ruling is on the movant, and any objections and questions left unresolved are waived and may not be relied upon on appeal. *See, e.g., Fisher v. Valco Farms*, 328 Ark. 741, 748, 945 S.W.2d 369, 373 (1997); *Rhodes v. Farmers Ins. Co.*, 79 Ark. App. 230, 234, 86 S.W.3d 401, 403 (2002). It was Brito's burden to obtain a ruling, and the absence of a ruling constitutes a waiver of this issue on appeal. Because his arguments regarding fraud or duress were not preserved for appellate review, we need not consider these issues.

Brito further argues that the circuit court erred in concluding that he failed to prove a mistake of fact. He asserts that his testimony established that he signed the acknowledgement of paternity under a mistake of fact. He further relies on a text message he received from Dunning that he entered into evidence to support his argument.

In *Madison v. Osburn*,[1] this court found that an appellant failed to establish a mistake of fact. In *Madison*, the person challenging the acknowledgement of paternity (the mother) had signed it knowing that either the purported father was not the biological father, or at the very least, there was a chance that he might not be. The court of appeals concluded that the appellant failed to establish a mistake of fact because the parties were not mistaken as to any material fact when they signed the acknowledgement.

Similarly, Brito's own testimony established that he suspected that Dunning was unfaithful to him when MC was born and, at first, questioned whether he was MC's father when she was born, but he signed the acknowledgement of paternity because they were together.

He further testified that he read the affidavit before he signed it and that he understood what he was signing. He acknowledged that because he had a question in his mind whether he was MC's father, he did not have to sign the acknowledgment and could have requested testing at that time. Thus, Brito's testimony established that, even though he had a question in his mind about his paternity of the child, he nevertheless signed the acknowledgement of paternity.

---

[1]2012 Ark. App. 212, 396 S.W.3d 264, *overruled in part on other grounds by Furr v. James*, 2013 Ark. App. 181, 427 S.W.3d 94.

In essence, Brito was aware when he signed the acknowledgement of paternity that he had only limited knowledge with respect to the facts to which the mistake related, but he nevertheless treated his limited knowledge as sufficient. As in *Madison*, Brito failed to meet his statutory burden. Accordingly, we affirm.

Affirmed.

GLADWIN and THYER, JJ., agree.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Sarah L. Waddoups*, for appellant.

*Gil Dudley*, for separate appellee Arkansas Dep't of Finance & Admin., Office of Child Support Enforcement.