Cite as 2024 Ark. App. 1

# ARKANSAS COURT OF APPEALS
## DIVISIONS I, III & IV
### No. CV-22-751

|  |  |
|---|---|
| DONALD MARTIN<br><br>APPELLANT<br><br>V.<br><br>ERIC HIGGINS, AS SHERIFF OF PULASKI COUNTY, AR<br><br>APPELLEE | Opinion Delivered January 10, 2024<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-22-4393]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>REVERSED AND REMANDED FOR FURTHER PROCEEDINGS |

## BART F. VIRDEN, Judge

Appellant Donald Martin appeals from the Pulaski County Circuit Court's order denying his request for material under the Arkansas Freedom of Information Act (FOIA) after concluding that an exemption for undisclosed investigations applied.[1] In reaching its decision, the trial court relied on our decision in *Hyman v. Sadler*, 2017 Ark. App. 292, 521 S.W.3d 167. The trial court stated that *Hyman* "specifically addressed" the scope of the undisclosed-investigations exemption and ruled that the case stands for the proposition that a criminal investigation remains open, or is considered ongoing, until a plea is entered or there has been a verdict following a trial. Because the *Hyman* case did not so hold, and

---

[1]Martin's complaint dealt with four FOIA requests. At issue in this appeal is the third request.

because the trial court's order here was based on its erroneous interpretation of *Hyman*, we reverse and remand for further proceedings.

Two criminal cases were filed against Jerry Wardlaw, one in December 2020 and another in February 2021. In July 2022, Martin filed a FOIA action against appellee Eric Higgins, as sheriff of Pulaski County, Arkansas, in part, to gain "arrest reports, to include evidence forms, officer notes, crime lab submission sheets, witness statements, video recordings and any other files contained therein" for Jerry Wardlaw. A plea hearing on Wardlaw's criminal cases was scheduled for August 1, 2022. Wardlaw did not enter a guilty plea as expected and, instead, opted to go to trial in late November.

The hearing on Martin's FOIA requests was held August 2—the day after Wardlaw's failed plea negotiations. Higgins claimed to have been prepared to disclose the arrest reports to Martin but refused to release the reports when Wardlaw's plea deal unraveled, saying that the investigation was "ongoing" until after the conclusion of Wardlaw's trial. The trial court agreed with Higgins's assertion that, pursuant to the *Hyman* precedent, the undisclosed-investigations exemption applied to prevent disclosure of the arrest reports to Martin because Wardlaw had not ultimately entered a guilty plea and would stand trial later that year. The trial court thus denied Martin's third FOIA request.

We liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *Holladay v. Glass*, 2017 Ark. App. 595, 534 S.W.3d 173. Furthermore, we broadly construe the FOIA in favor of disclosure. *Id.* An exemption to disclosure exists for "undisclosed investigations by law

2

enforcement agencies of suspected criminal activity." Ark. Code Ann. § 25-19-105(b)(6) (Supp. 2023). The trial court expressly relied on our decision in *Hyman* as having established a bright-line rule for application of the undisclosed-investigations exemption.

In *Hyman*, attorney William Whitfield Hyman filed a FOIA complaint to compel defendants, collectively referred to as the Arkansas State Police (ASP), to respond to a records request to include dash-camera surveillance video of Nathan Alexander Earp's arrest for driving while intoxicated. The trial court dismissed the complaint as moot because Hyman had received all of the material he had requested. Hyman raised several points on appeal, but we affirmed because the trial court correctly determined that the issue was moot, and we specifically declined to address Hyman's other arguments, including whether the trial court erred in determining that the ASP had *rightly* denied his request because of an undisclosed investigation. *See* 2017 Ark. App. 292, at 8, 521 S.W.3d at 171.

Here, the trial court appears to have relied on a single—somewhat awkward—sentence from *Hyman*: "We agree with ASP's contention that the record in this case establishes that ASP had an ongoing criminal investigation regarding Earp's DWI arrest, then considered the investigation closed when Earp entered a guilty plea." *Id.* at 7, 521 S.W.3d at 171. Parsing the quoted sentence as best we can, this court simply expressed agreement with what the record on appeal showed: (1) the ASP had had an ongoing investigation, but (2) the ASP had considered the matter closed when Earp entered a guilty plea. In this case, the trial court erred as a matter of law in denying Martin's FOIA request on the basis of its misapprehension of the law established by *Hyman.* The trial court essentially conflated our simple

3

acknowledgement of a party's *contention and belief* with a statement of law—specifically, a bright-line rule on what constitutes an undisclosed, or ongoing, investigation.

The trial court's analysis of the question whether the material requested by Martin was exempt from disclosure under the FOIA ended with its acceptance of Higgins's assertion that there was an ongoing investigation as a matter of law pursuant to *Hyman* inasmuch as Wardlaw did not plead guilty. Accordingly, although a witness was present and could have testified about the contents of the withheld materials and the ongoing nature of any investigation, the trial court declined to hear any testimony after concluding that *Hyman* settled the issue as a matter of law.[2] Thus, Higgins was not held to his burden of proving that an exemption applied to prevent disclosure of Wardlaw's arrest reports.[3]

---

[2]Although the dissent refers to Lt. Cody Burk's "proffered testimony" and a so-called *proposed* stipulation, the hearing transcript indicates that, at most, Lieutenant Burk would have testified that he had communications with Martin and "that there was information that was being withheld subject to an investigation exception." The hearing transcript clearly shows that Higgins's basis for withholding the information requested by Martin was the simple fact that Wardlaw had not pled guilty, which led the trial court to conclude that Lieutenant Burk's testimony, i.e., evidence, was unnecessary.

[3]The dissenting judges assert that it is immaterial that the trial court misstated the *Hyman* holding from the bench. They would like to ignore the trial court's oral ruling by stating that the written order controls. Of course an order is effective only when reduced to writing. Moreover, generally speaking, a written order controls over oral pronouncements, but that is the case only when there is a *conflict* or a *discrepancy* between the oral ruling and the written order. *See Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823 (noting that, to the extent that the trial court's bench ruling conflicted with its written order, if at all, the written order controls over the oral ruling); *Radford v. State*, 2018 Ark. App. 89, 538 S.W.3d 894 (recognizing that a discrepancy between a sentencing court's oral ruling and the subsequent written order is decided in favor of the written order). Here, however, there is no conflict or discrepancy between the trial court's oral ruling and its written order. The oral ruling explains the simple denial in the written order, and we routinely rely on a trial court's oral

Whether an investigation is open and ongoing is a question of fact for the trial court. *Dep't of Ark. State Police v. Keech Law Firm, P.A.*, 2017 Ark. 143, 516 S.W.3d 265. Here, without any admitted evidence on the subject, it is impossible to know whether Wardlaw's arrest reports were sufficiently investigatory in nature to fit within the undisclosed-investigations exemption to the FOIA. *See Hengel v. City of Pine Bluff*, 307 Ark. 457, 821 S.W.2d 761 (1991) (holding that arrest records, among other items, were not subject to disclosure under the FOIA because, although there was testimony admitted on the topic, the record on appeal did not demonstrate that the arrest records were sufficiently investigatory in nature for application of the undisclosed-investigations exemption). According to J. Watkins, *The Arkansas Freedom of Information Act* 72 (1988), subsection (b)(6) of the FOIA is meant to exempt "internal 'work product' materials containing details of an investigation." *See id.* at 461, 821 S.W.2d at 763. Moreover, our supreme court held in *Johninson v. Stodola*, 316 Ark. 423, 872 S.W.2d 374 (1994), that it is incumbent upon the trial court to first review the relevant material in camera before determining whether an exemption applies. Here, there is nothing in the record to indicate that the trial court conducted any such review

---

statements from the bench to inform or to explain the reasoning behind a written order. *See, e.g., Grindstaff v. Strickland*, 2017 Ark. App. 634, 535 S.W.3d 661 (quoting at length and considering the trial court's oral findings); *Kimbrough v. Kimbrough*, 83 Ark. App. 179, 119 S.W.3d 66 (2003) (considering both the trial court's oral and written findings); *see also Carter v. Carter*, 19 Ark. App. 242, 719 S.W.2d 704 (1986) (reversing a change-of-custody decision because the trial court's oral findings demonstrated that the trial court had erroneously placed the burden of proof on the wrong party). Here, the trial court's statements from the bench demonstrate that its overriding, if not sole, reason for denying Martin's third FOIA request was its misunderstanding of our holding in *Hyman*.

before concluding that the undisclosed-investigations exemption applied given the "precedent" in *Hyman*.

To summarize, we reverse the trial court's decision because the trial court erred as a matter of law in its application of the undisclosed-investigations exemption on the basis of its misunderstanding of our decision in *Hyman*. Again, *Hyman* did not establish a bright-line rule on what constitutes an undisclosed, or an ongoing, investigation. Moreover, there is some question whether Martin's requested arrest reports for Wardlaw are sufficiently investigatory in nature to qualify under the exemption. On remand, the trial court is instructed to conduct an in camera review of the relevant material as contemplated by *Johninson, supra*, and to perform a meaningful fact-finding inquiry before making its decision on whether the undisclosed-investigations exemption applies to Wardlaw's arrest reports.[4]

---

[4]The dissenting judges fault the majority for failing to answer a question of law—the scope of the undisclosed-investigations exemption—but to do so would depend on factual findings that the trial court here did not make. The dissent would essentially act as a surrogate trial court and supply those missing factual findings to reach this question of law. Although traditional equity cases are reviewed de novo as to both findings of fact and conclusions of law, *Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979), the same is not true for actions at law, such as we have here. An appellate court cannot make factual findings in actions at law. *Charleston Sch. Dist. No. 9 v. Sebastian Cnty. Bd. of Educ.*, 300 Ark. 242, 778 S.W.2d 614 (1989); *Houston v. Adams*, 239 Ark. 346, 389 S.W.2d 872 (1965). "In law cases, it is not our province to decide issues of fact in the first instance." *Boone Cnty. Abstract & Title Co. v. Boone Cnty.*, 252 Ark. 255, 256, 478 S.W.2d 429, 430 (1972); *see also Leach v. Smith*, 130 Ark. 465, 197 S.W. 1160 (1917).

Moreover, we will not presume that a trial court made the necessary findings to support a judgment when, as here, it is apparent from its stated reasons that the trial court acted under an erroneous conception of the applicable law and thus failed to make factual findings on an essential issue. *See, e.g., Britt v. State*, 2022 Ark. App. 58, 639 S.W.3d 919. The proper remedy in such actions at law is to remand for the trial court to make factual

We express no opinion on whether the trial court should release the requested material to Martin.

Reversed and remanded for further proceedings.

HARRISON, C.J., and WOOD, HIXSON, MURPHY, and BROWN, JJ., agree.

GLADWIN, GRUBER, and BARRETT, JJ., dissent.

**ROBERT J. GLADWIN, Judge, dissenting**. "The dispute here is what is the definition of an ongoing criminal investigation now that the parties are negotiating a plea arrangement." This statement by Martin's counsel to the circuit court succinctly states the issue presented to both the circuit court and to this court. The majority fails to answer this question. Because I believe that the issue is properly presented and briefed, I would address the merits of the case. Therefore, I respectfully dissent.

On August 2, 2022, the circuit court held an expedited hearing at Martin's request to address four separate Freedom of Information Act (FOIA) requests filed by Martin. Among these requests was a request seeking "arrest reports, to include evidence forms, officer notes, crime lab submission sheets, witness statements, video recordings, and any other files contained therein" for Jerry Wardlaw. It is undisputed that Mr. Wardlaw had a trial date set for August 1, 2022, that was continued until November 2022 because Mr. Wardlaw refused to enter a plea of guilty to the pending criminal charges against him. At the hearing, the State

---

findings. *See Charleston*, *supra*; *Houston*, *supra*; *Guinn v. State*, 27 Ark. App. 260, 771 S.W.2d 290 (1989).

asserted that it would be ready to release any and all information, but because Mr. Wardlaw had failed to plead, the investigation in the criminal case was ongoing.

The State announced that it had one witness, Lieutenant Cody Burk, who would testify regarding Martin's requests, including the State's basis for relying on the ongoing-criminal-investigation exception to Martin's third FOIA request. In support of this position, the State cited *Hyman v. Sadler*, 2017 Ark. App. 292, 521 S.W.3d 167. At no time during the hearing did Martin's counsel object to the proposed stipulation of Lieutenant Burk's proffered testimony. Nor did Martin's counsel argue against the State's position regarding *Hyman* or offer any other case law related to the issue of the ongoing- criminal-investigation exception to FOIA. In fact, the circuit court stated, "Anything further Mr. Steinbuch, about what's denominated as Third FOIA Request?" Martin's counsel responded, "No, the issue is as I described, the scope of the ongoing-investigation exception."

The circuit court's resulting order states:

> Plaintiff's request on June 22, 2022, to Separate Defendant for "arrest reports, to include evidence forms, officer notes crime lab submission sheets, witness statements video recordings and any other files contained therein for Jerry Wardlaw from January 1, 2018 to present" as outlined in Plaintiff's Complaint as his "THIRD FOIA REQUEST" is **DENIED** and **DISMISSED WITH PREJUDICE**.

The majority opinion states that the circuit court declined to hear any testimony at the hearing. I submit that the circuit court accepted without objection Burk's stipulated testimony in an effort to address all four of Martin's FOIA requests. The majority also states that the circuit court conflated our holding in *Hyman*, *supra*. First there was scant discussion of *Hyman*, and the circuit court certainly did not parse out a single sentence of the opinion.

8

Further, even if the circuit court misstated from the bench our holding, it is immaterial because the written order simply denied the request. It is well established that the circuit court's written order supersedes any oral statements from the bench. Even assuming the circuit court's statement regarding *Hyman* constituted an oral ruling, an oral order announced from the bench does not become effective until reduced to writing and filed. *Steinbuch v. Univ. of Ark.*, 2019 Ark. 356, at 11, 589 S.W.3d 350, 357. The written order controls. *Id.*

During this hearing, there were neither evidentiary errors nor procedural arguments that would warrant a remand. The circuit court held that under the agreed facts of this case, the ongoing-investigation exception should apply. There is no reason that this court should not answer that question.[1]

GRUBER and BARRETT, JJ., join.

*Corbitt Law Firm, PLLC*, by: *Chris P Corbitt*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *Megan D. Hargaves* and *Cara D. Butler*, for appellee.

---

[1]I suspect that by this time, the criminal charges against Mr. Wardlaw have been resolved, making the issue moot, as is the exact holding of *Hyman*.